**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

SIDNEY FERNÁNDEZ RODRÍGUEZ, *et al*.

Plaintiffs,

v.

U.S. CITIZENSHIP AND IMMIGRATION SERVICES, *et al*.

Defendants.

No. 7:26-CV-00177-DC

**MOTION TO DISMISS**
**PLAINTIFFS' THIRD AMENDED COMPLAINT**

Defendants respectfully move to dismiss Plaintiffs' Third Amended Complaint ("TAC"), ECF 23, in its entirety.[1] For the reasons set forth below, the Court lacks jurisdiction over each of Plaintiffs' claims and should dismiss the TAC under Federal Rule of Civil Procedure 12(b)(1). In the alternative, the Court should dismiss under Rule 12(b)(6) for failure to state a claim.

**INTRODUCTION**

Plaintiffs are 42 Cuban nationals.[2] Each Plaintiff filed with USCIS an Application to Register Permanent Residence or Adjust Status (Form I-485) under the Cuban Adjustment Act

---

[1] Plaintiffs name the following defendants: (1) U.S. Citizenship and Immigration Services ("USCIS"); (2) Joseph B. Edlow, in his official capacity as Director of USCIS; (3) the U.S. Department of Homeland Security ("DHS"), which houses USCIS; and (4) Markwayne Mullin, in his official capacity as Secretary of DHS. TAC ¶¶ 53-56. However, as detailed in Argument Section IV, *infra*, Plaintiffs generically assert all causes of action against all "Defendants," rendering the TAC an improper group pleading. *See Owens v. Jastrow*, 789 F.3d 529, 537 (5th Cir. 2015).

[2] The Court has noted prior inconsistencies regarding the number of plaintiffs. *See* ECF 20 at 5. However, the TAC lists 42 plaintiffs, TAC ¶¶ 11-52, and Plaintiffs separately confirmed this number is correct. ECF 25 at 9-10.

("CAA")[3] (referred to herein as "CAA Applications"). Many also filed an Application for Employment Authorization (Form I-765) (referred to herein as "EAD Applications"). *Id.* ¶¶ 1-3, 10-52. Plaintiffs ask the Court to set deadlines for USCIS to adjudicate those applications. They also challenge a now-defunct policy that barred final adjudication of certain benefit requests. *Id.* ¶¶ 116-50.

The TAC's five counts fall into two groups. Counts I and II assert unreasonable delay claims under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1). Counts III and IV seek the same relief under the Mandamus Act, 28 U.S.C. § 1361. Those four counts fail because no statute or binding regulation requires USCIS to adjudicate either the CAA Applications or the EAD Applications by a date certain. This Court has already considered—and rejected—the legal premise on which Plaintiffs' "unreasonable delay" claims depend. In denying preliminary relief, the Court concluded that Plaintiffs had not identified any statute or regulation requiring USCIS to adjudicate their applications within a particular period. ECF 20 at 5-6. That remains true of the TAC; it identifies no new statutory deadline, no regulation prescribing an order of adjudication, and no other source of law making the requested agency action legally required. The same defect that hampered Plaintiffs' request for preliminary relief therefore requires dismissal of the TAC under *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 63-65 (2004).

Count V is different insofar as it challenges an affirmative agency action under the APA, 5 U.S.C. § 706(2)(A). But the challenged policy, which the TAC calls the "Benefits Hold Policy," is no longer in effect. A federal court in Rhode Island vacated that policy nationwide; on appeal, the First Circuit refused to stay that portion of the district court's ruling; and ten days later, a second

---

[3] Pub. L. No. 89-732, 80 Stat. 1161 (1966) (codified as amended at 8 U.S.C. § 1255 note).

district court in California enjoined the same policy. USCIS has twice confirmed that its benefits application adjudicators must now process applications as usual. Accordingly, Count V is moot.

For these reasons, the Court does not have jurisdiction to hear Plaintiffs' claims or grant the requested relief and should dismiss the TAC in its entirety under Rule 12(b)(1). In the alternative, for the reasons outlined below, the Court should dismiss the TAC under Rule 12(b)(6) for its failure to state a claim.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Plaintiffs' CAA and EAD Applications

Plaintiffs are 42 Cuban nationals who allege each Plaintiff was inspected and admitted or paroled into the United States, accrued at least one year of physical presence in the United States, and filed a CAA Application with USCIS for adjustment of status under the CAA. TAC ¶¶ 1-4, 11-52, 70-75. Many Plaintiffs also filed an EAD Application seeking employment authorization under category (c)(9), which applies to certain noncitizens with pending adjustment applications. *Id.* ¶¶ 3, 64-75; 8 C.F.R. § 274a.12(c)(9).[4]

The CAA provides that the status of a qualifying Cuban national "may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe." 8 U.S.C. § 1255 note. The statute identifies the conditions under which adjustment may be granted, but it does not direct USCIS to decide an application within any specified period. The

[4] Notably, as the relevant Plaintiffs and their attorneys are presumably aware, since the time Plaintiffs initiated this litigation, USCIS has approved several Plaintiffs' CAA and/or EAD Applications. Indeed, following a June 5, 2026 order from the District of Rhode Island lifting the hold on adjudication of benefits applications (*see infra*), USCIS has approved six Plaintiffs' CAA Applications and five Plaintiffs' EAD Applications. Importantly, USCIS's approval of a Plaintiff's CAA Application moots any claim seeking adjudication not only of that application, but also any associated EAD Application. Once a CAA Application is approved and the Plaintiff is adjusted to lawful permanent resident status, the Plaintiff is authorized to work incident to that status and no longer requires an employment authorization document. *See* 8 C.F.R. § 274a.12(a)(1), (c)(9).

employment-authorization provisions are similar. A person with a pending adjustment application "may apply" for employment authorization, and authorization "may be granted" in the agency's discretion. 8 C.F.R. §§ 274a.12(c)(9), 274a.13(a)(1). Those provisions likewise contain no adjudication deadline.

## II. The Challenged USCIS Directive

On December 2, 2025, USCIS issued PM-602-0192, "Hold and Review of All Pending Asylum Applications and All USCIS Benefit Applications Filed by Aliens from High-Risk Countries" (the "**December Memo**"). *See Dorcas Int'l Inst. of Rhode Island v. United States Citizenship & Immigr. Servs.*, 834 F. Supp. 3d 242, 268-69 (D.R.I. 2026), *judgment entered*, 2026 WL 1695954 (D.R.I. June 11, 2026). The December Memo contained several directives. As relevant here, it (1) paused final adjudication of pending benefit requests filed by covered persons; (2) directed a "comprehensive re-review" of certain benefits that USCIS had already approved for covered persons who entered the United States on or after January 20, 2021; and (3) paused adjudication of all pending asylum applications. *See id.*

USCIS later issued PM-602-0194, "Hold and Review of USCIS Benefit Applications Filed by Aliens from Additional High-Risk Countries" (Jan. 1, 2026) (the "**January Memo**"), which extended the benefit-related directives to additional countries. The December and January Memos are referred to together as the "**Policy Memos**." This motion refers to the Policy Memos' directive to pause final adjudication of pending benefit requests as the "**Benefits Hold Policy**."

Importantly for purposes of this litigation, other directives discussed in the TAC are distinct from the Benefits Hold Policy. Those other directives include those (1) requiring a re-review of previously approved benefits (the "**Comprehensive Re-Review Policy**"); (2) pausing all asylum requests (the "**Global Asylum Hold Policy**"); and (3) requiring USCIS adjudicators, pursuant to

an amended Policy Manual provision, to consider specified country-related information when deciding discretionary benefit requests (the "**Country-Specific Factors Policy**"). *See Dorcas Int'l Inst.*, 834 F. Supp. 3d at 271-72.

None of the 42 Plaintiffs alleges that he or she has a pending asylum application or a previously approved benefit undergoing re-review. The TAC instead alleges that Plaintiffs' CAA and related EAD Applications remain pending, and that "Defendants have exacerbated these delays by adopting an ongoing policy ('Benefits Hold Policy') that indefinitely delays adjudication" of CAA Applications. TAC ¶ 1; *see also id.* ¶¶ 11-52, 64-75, 112. Accordingly, the Benefits Hold Policy is the only policy referenced in the TAC relevant to Count V.[5]

## III. This Court's Prior Ruling and Subsequent Developments

Plaintiffs moved for a temporary restraining order and preliminary injunction shortly after filing their *Second* Amended Complaint. ECF 18. The motion then before the Court sought relief for 37 Plaintiffs and asked the Court to require USCIS to adjudicate their CAA and EAD Applications within 30 days. ECF 18 at 19; *see also* ECF 25 at 9. On July 6, 2026, the Court denied Plaintiffs' motion. ECF 20. Relying on recent Fifth Circuit decisions, the Court concluded that Plaintiffs had not identified a clear statutory or regulatory command requiring USCIS to act

[5] Plaintiffs also reference USCIS's May 21, 2026 memorandum titled "Adjustment of Status Is a Matter of Discretion and Administrative Grace, and an Extraordinary Relief That Permits Applicants to Dispense with the Ordinary Consular Visa Process," PM-602-0199 (the "**Adjustment-of-Status Memo**"). TAC ¶¶ 90-96. That memorandum addresses the discretionary nature of adjustment of status; it is not one of the Policy Memos, and it did not impose the Benefits Hold Policy. The distinction matters because the TAC sometimes discusses the Adjustment-of-Status Memo in close proximity to its allegations concerning the Benefits Hold Policy, seemingly implicating the Adjustment-of-Status Memo in its request for relief. *See* TAC ¶¶ 82-96. But Count V specifically identifies the challenged "Benefits Hold Policy" as the policy "enshrined in PM-602-0192." *Id.* ¶ 143. Neither the TAC, nor Plaintiffs' motion for reconsideration, ECF 25 at 1-2, 7-8, identifies the Adjustment-of-Status Memo as the source of the challenged hold.

within a particular time. *Id.* at 5-6.[6] This Court further held that the EAD Applications did not alter the analysis and that Plaintiffs had not established the requirements for mandamus. *Id.* at 6-7.

Prior to filing the TAC, Plaintiffs moved for reconsideration of the Court's TRO/PI denial. ECF 25. As with Plaintiffs' original motion—and the TAC—the reconsideration motion does not identify a statute or regulation requiring USCIS to adjudicate of Plaintiffs' CAA or EAD Applications by a date certain. Rather, Plaintiffs contend that the authorities cited by the Court concern § 706(1), while Count V separately challenges affirmative agency action under § 706(2)(A). *Id.* at 4-8.

While these proceedings were ongoing, on June 5, 2026, the District of Rhode Island vacated the Benefits Hold Policy, as well as the Global Asylum Hold Policy, the Comprehensive Re-Review Policy, and the Country-Specific Factors Policy. *Dorcas Int'l Inst.*, 834 F. Supp. 3d at 327. In response, USCIS publicly instructed its personnel that the Policy Memos, including the Benefits Hold Policy—as well as the policy alert implementing the Country-Specific Factors Policy—must be treated as though they were not in effect. USCIS.GOV, "Court Order on Hold Policies" (June 12, 2026) (last visited Sept. 9, 2026).

At the same time, USCIS and its co-defendants in *Dorcas Int'l* appealed the district court's decision and sought a stay of the court's order pending appeal. But the First Circuit recently stayed the judgment only as to the Comprehensive Re-Review Policy. *Dorcas Int'l Inst. of Rhode Island v. USCIS*, No. 26-1703, 2026 WL 2364384, at *1 (1st Cir. Aug. 14, 2026). Thus, whatever the ultimate disposition of the *Dorcas Int'l* appeal, the Benefits Hold Policy remains vacated.

---

[6] The Court relied on, *inter alia*, *Li v. Jaddou*, No. 22-50756, 2023 WL 3431237, at *1 (5th Cir. May 12, 2023); *Koppula v. Jaddou*, No. 1:22-cv-844-RP, 2023 WL 3470904, at *2 (W.D. Tex. May 15, 2023), *aff'd*, No. 23-50399, 2024 WL 3540463 (5th Cir. July 25, 2024); and *Gupta v. Jaddou*, No. 4:22-cv-00650, 2023 WL 4303604, at *4 (E.D. Tex. June 30, 2023), *aff'd*, No. 23-40424, 2024 WL 3540464 (5th Cir. July 25, 2024).

Further, ten days later, the Northern District of California issued a separate order enjoining enforcement of, *inter alia*, the Benefits Hold Policy. *Red Eagle Law, L.C. v. Edlow*, No. 26-cv-04850, 2026 WL 2476424, at *6-7 (N.D. Cal. Aug. 24, 2026). That court declined, however, to impose the specific deadlines the plaintiffs requested—60 days for benefit applications and 10 days for employment-authorization applications. *Id.* at *6. Instead, the court found that adjudicating within a certain number of dates was improper and required USCIS to "put plaintiffs back in the normal queue." *Id.* Thereafter, USCIS again confirmed it would process covered applications and treat the Benefits Hold Policy as though it were not in effect. USCIS.GOV, "Recent Court Order on Hold Policies" (Aug. 28, 2026) (last visited Sept. 9, 2026).[7]

## LEGAL STANDARD

### I. Rule 12(b)(1) – Lack of Subject-Matter Jurisdiction

Dismissal is proper under Rule 12(b)(1) "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builder Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Plaintiffs bear the burden of establishing subject-matter jurisdiction. *Alfonso v. United States*, 752 F.3d 622, 625 (5th Cir. 2014). In ruling on a motion under Rule 12(b)(1), the Court may consider: (a) the complaint alone; (b) the complaint supplemented by undisputed facts evidenced in the record; or (c) the complaint supplemented by undisputed facts plus the Court's resolution of disputed facts. *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009).

---

[7] *See also* December Memo (PM-602-0192), USCIS.GOV (Dec. 2, 2025) (last visited Sept. 9, 2026) (providing in red italic font at the top of the memo that "[t]his memorandum is no longer in effect due to court orders" in *Dorcas Int'l* and *Red Eagle Law*); January Memo (PM-602-0194), USCIS.GOV (Jan. 1, 2026) (last visited Sept. 9, 2026) (providing the same).

Federal courts may adjudicate only "actual, ongoing controversies between litigants." *Deakins v. Monaghan*, 484 U.S. 193, 199 (1988). Disputes that have been resolved or "evanesced because of changed circumstances" are considered moot. *Am. Med. Ass'n v. Bowen*, 857 F.2d 267, 270 (5th Cir. 1988). "Mootness is a jurisdictional matter" because "a claim is moot when a case or controversy no longer exists between the parties." *Brinsdon v. McAllen Indep. Sch. Dist.*, 863 F.3d 338, 345 (5th Cir. 2017) (citing *Bd. of Sch. Comm'rs v. Jacobs*, 420 U.S. 128, 129 (1975)).

**II. Rule 12(b)(6) – Failure to State a Claim**

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although a court considering a Rule 12(b)(6) motion should accept all well-plead facts from the complaint as true, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

**ARGUMENT**

**I. Counts I and II Fail Because Plaintiffs Identify No Legally-Required Adjudication Deadline.**

Counts I and II invoke APA § 706(1) and ask the Court to compel USCIS to adjudicate Plaintiffs' CAA and EAD Applications within court-imposed deadlines. TAC ¶¶ 116-29; Prayer for Relief ¶¶ 5-6. But § 706(1) is not a general license for courts to supervise agency workloads or decide how quickly an agency should resolve each matter before it. Rather, § 706(1) permits

relief only when an agency has failed to take a discrete action that it is legally required to take. Because Plaintiffs identify no law requiring USCIS to decide Plaintiffs' applications by a particular time, the APA does not authorize the Court to compel agency adjudication of Plaintiffs' applications. Accordingly, the Court should dismiss Counts I and II for lack of jurisdiction.

**A. Section 706(1) reaches only discrete agency action explicitly required by law.**

The Supreme Court addressed the scope of APA § 706(1) in *Norton*, explaining that the provision empowers a court to compel agency action only when a plaintiff identifies a "discrete agency action" that the agency is "required to take." 542 U.S. at 62-64. That limitation is essential. Without it, § 706(1) would permit broad judicial oversight of agency programs and allow courts to substitute their own priorities for those assigned to the agency. *Id.* at 64-67. Thus, a court may enforce a specific, unequivocal command already imposed by law, but it may not create a duty when Congress or the agency has not. *Id.*; *Fort Bend Cnty. v. U.S. Army Corps of Eng'rs*, 59 F.4th 180, 197 (5th Cir. 2023).

The Fifth Circuit applied that rule to immigration-delay claims in *Cheejati v. Blinken*. There, as here, the plaintiffs relied on statutes and regulations assigning the agency authority to adjudicate immigration applications. 106 F.4th 388, 395-96 (5th Cir. 2024). But as the court recognized, a grant of adjudicative authority does not itself require the agency to adjudicate within a particular period. Because the plaintiffs could not identify an "unequivocal command" that the agency had failed to obey, the Fifth Circuit ordered the delay claims dismissed. *Id.* at 396-97.

The same rule controlled in *Li v. Jaddou*. In *Li*, the plaintiff relied on 8 U.S.C. § 1571(b), which expresses Congress's "sense" that immigration-benefit applications should be processed within 180 days. 2023 WL 3431237, at *1. The Fifth Circuit held that this "aspirational" language did not create a mandatory deadline and therefore could not support relief under § 706(1). *Id.* The

district courts reached the same conclusion in *Koppula*, 2023 WL 3470904, at *2, and *Gupta v. Jaddou*, 2023 WL 4303604, at *4, despite alleged delays substantially longer than those at issue here. The Fifth Circuit affirmed both of those decisions. *Koppula*, 2024 WL 3540463, at *1 (5th Cir. July 25, 2024); *Gupta*, 2024 WL 3540464, at *1 (5th Cir. July 25, 2024).

This Court has already applied these authorities to Plaintiffs' claims. In denying preliminary relief, the Court found no statutory or regulatory command requiring USCIS to decide Plaintiffs' applications within a particular time. ECF 20 at 5-6. The TAC does not cure this defect. It adds five Plaintiffs and provides additional allegations about USCIS policies, but it does not identify a binding adjudication deadline applicable to any Plaintiff.

**B. Neither the CAA nor the employment-authorization provisions impose a deadline.**

The CAA does not contain the command § 706(1) requires. It provides that the status of a qualifying Cuban national "may be adjusted" in the Attorney General's discretion, CAA § 1, 80 Stat. at 1161, but does not state when an application must be decided. Nor does 8 C.F.R. § 245.2(a)(1), which generally assigns USCIS jurisdiction over adjustment applications. As *Cheejati* explains, a provision identifying which agency may adjudicate an application is not a command requiring adjudication within a particular period. 106 F.4th at 396.

Plaintiffs' allegations that they are prima facie eligible for adjustment do not supply the missing deadline. *See* TAC ¶¶ 59-63, 70-75. Eligibility to be considered for discretionary relief is not an entitlement to receive that relief, much less a right to receive a decision according to an applicant's preferred timetable. *See Patel v. Garland*, 596 U.S. 328, 332-34 (2022); *Momin v. Jaddou*, 113 F.4th 552, 556-60 (5th Cir. 2024); *Elkins v. Moreno*, 435 U.S. 647, 667 (1978). Congress could have required USCIS to decide CAA Applications within a specified time. It did not.

The same is true of Plaintiffs' EAD Applications. Congress authorized the DHS Secretary to determine which noncitizens may be employed in the United States. 8 U.S.C. § 1324a(h)(3). The implementing regulation says a noncitizen with a pending adjustment application "may apply" for employment authorization and that authorization "may be granted" at USCIS's discretion. 8 C.F.R. §§ 274a.12(c)(9), 274a.13(a)(1). Neither provision states when USCIS must act.

The surrounding law confirms that omission. Congress has expressly mandated employment authorization for specific classes of nonimmigrants, including certain spouses in L-2 and E status. 8 U.S.C. §§ 1184(c)(2)(E), 1184(e)(2). It enacted no comparable requirement for EAD applications based on a pending CAA status-adjustment application. Courts should not insert language that Congress chose to omit. *Russello v. United States*, 464 U.S. 16, 23 (1983); *Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019).

Nor can a deadline be derived from 8 C.F.R. § 274a.13(b). That provision requires USCIS to give written notice after it decides an employment-authorization application; it does not prescribe when USCIS must reach that decision. One district court recently rejected a similar effort to transform the notice provision into an adjudication deadline. *D'Cruz v. USCIS*, No. H-24-340, 2024 WL 4523307, at *2-3 (S.D. Tex. Oct. 9, 2024). And this Court relied on *D'Cruz* when it concluded that Plaintiffs' EAD Applications did not change the preliminary-injunction analysis. ECF 20 at 6. Nothing in the TAC warrants a different conclusion now.

Finally, the refugee provisions cited in the TAC are inapplicable. Section 1157(c)(2) concerns the spouse and child of a refugee admitted under the refugee-admissions program, and 8 C.F.R. § 207.7(a) addresses employment authorization for a person admitted as a refugee under § 207. Plaintiffs do not allege that they were admitted as refugees. They allege that they were admitted or paroled, applied for adjustment under the CAA, and sought category (c)(9)

employment authorization through their EAD Applications. TAC ¶¶ 2-3, 11-52, 61, 64-65. Provisions governing a different statutory program impose no duty to adjudicate these applications within a particular time.

**C. No other source of law establishes an adjudication deadline.**

Plaintiffs also rely on APA § 555(b), which instructs agencies to conclude matters presented to them "within a reasonable time." 5 U.S.C. § 555(b); TAC ¶¶ 117, 124. But APA § 706(1) defines the action a court may compel, and *Norton* limits that remedy to discrete action the agency is legally required to take. 542 U.S. at 62-65. Section 555(b)'s general instruction does not establish a date-certain deadline for Plaintiffs' CAA or EAD Applications, nor does it authorize a court to select a deadline without a more specific source of law. As discussed *infra*, no statutory or regulatory provisions provide a "meaningful standard" to review the time it should take to adjudicate a status-adjustment application under the CAA. Because no statute or regulation mandates an adjudication deadline, there is no standard against which the Court can measure whether the agency has acted "within a reasonable time" or "unreasonably delayed adjudication." 5 U.S.C. § 555(b); 5 U.S.C. § 706(1). The passage of time cannot, standing alone, support a claim of unreasonable delay. *See INS v. Miranda*, 459 U.S. 14, 18 (1982).

USCIS's published processing estimates do not change the analysis. Those estimates describe the period in which the agency has completed a stated percentage of similar cases. They do not purport to guarantee a decision in any individual case, and they do not carry the force of law. An agency estimate cannot become the unequivocal statutory or regulatory command that § 706(1) requires. *See Li*, 2023 WL 3431237, at *1; *Koppula*, 2023 WL 3470904, at *2; *Gupta*, 2023 WL 4303604, at *4.

For the same reason, the six factors identified in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*"), do not supply jurisdiction or create a duty to act. The *TRAC* factors help a court evaluate whether the delay in performing legally required action is unreasonable. They do not answer the antecedent question whether the agency is legally required to perform the action on the timetable the plaintiff seeks. *See Da Costa v. Immigration Investor Program Office*, 80 F.4th 330, 340 (D.C. Cir. 2023); *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016). Because Plaintiffs have not identified a required adjudication deadline, there is no need to balance the *TRAC* factors. This Court correctly stopped at that threshold. ECF 20 at 5-6.

**D. Congress also barred judicial control over USCIS's pace of adjudication.**

The APA does not permit review of action "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). That limitation applies when the relevant law provides no meaningful standard against which a court can judge the agency's exercise of discretion. *See Heckler v. Chaney*, 470 U.S. 821, 830 (1985); *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993). Here, neither the CAA nor the relevant employment-authorization regulations provide a timing standard by which the Court could determine that 30 days, 60 days, or some other period is legally required. Choosing such a deadline would therefore require the Court to create the standard rather than apply one supplied by law.

The recent decisions concerning the Benefits Hold Policy do not authorize that result. *Dorcas Int'l* addressed whether categorical USCIS directives constituted unlawful final agency action under § 706(2). It did not order USCIS to decide particular applications by a date certain. 834 F. Supp. 3d at 326-28. Likewise, although *Red Eagle Law* enjoined the Benefits Hold Policy, it expressly declined to require decisions within the plaintiffs' requested 60- and 10-day periods. 2026 WL 2476424, at *6. It required only normal-course processing. *Id.* Plaintiffs seek more

here. They ask the Court to prescribe deadlines for 42 individual applications. TAC Prayer for Relief ¶¶ 5-6. Nothing in the CAA, the employment-authorization regulations, or APA § 706(2) authorizes such relief.

## II. Counts II and IV Do Not State Claims for Mandamus Relief.

Plaintiffs cannot obtain the same relief they seek under the APA by invoking the Mandamus Act. Mandamus is an extraordinary remedy reserved for exceptional circumstances. *Cheney v. U.S. District Court for the District of Columbia*, 542 U.S. 367, 380 (2004). A plaintiff must establish (1) a clear right to relief; (2) a clear duty by the defendant to perform the requested act; and (3) the absence of any other adequate remedy. *Wolcott v. Sebelius*, 635 F.3d 757, 768 (5th Cir. 2011). The asserted duty must be ministerial, plainly prescribed, and free from doubt. *Giddings v. Chandler*, 979 F.2d 1104, 1108 (5th Cir. 1992).

Counts III and IV fail at the outset because Plaintiffs cannot establish USCIS had a clear duty to adjudicate their CAA or EAD Applications by a particular date. As discussed above, the CAA and employment-authorization regulations use discretionary language and contain no deadline. For that reason, courts generally treat immigration-delay claims under mandamus and § 706(1) as rising or falling together. *See Sawan v. Chertoff*, 589 F.Supp.2d 817, 822 (S.D. Tex. 2008) ("Because both statutes offer similar means of compelling an agency to take action which by law it is required to take, claims made under [§ 706(1)] of the APA and the federal mandamus statute are subject to the same standard."). The same absence of a legally required deadline that defeats Counts I and II defeats the mandamus claims.

Mandamus is unavailable for a second reason: Plaintiffs have pleaded another avenue of review under the APA, which expressly authorizes relief for agency action unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706(1); TAC ¶¶ 116-29. The requirement that no adequate

alternative remedy exist concerns the availability of another remedial avenue, not whether the plaintiff will ultimately prevail through it. *See Cheney*, 542 U.S. at 380 ("[T]he party seeking issuance of the writ [must] have no other adequate means to attain the relief he desires."); *Sawan*, 589 F. Supp. 2d at 826 ("Because in immigration-delay cases like this one, the duty to be enforced by way of mandamus is a duty of timeliness established by the APA, there is little reason to consider mandamus claims separately from claims under the APA.") (quoting *Ali v. Frazier*, 575 F. Supp. 2d 1084, 1090 (D. Minn. 2008)); *Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022) ("Because mandamus relief and relief under the APA are in essence the same, when a complaint seeks relief under the Mandamus Act and the APA and there is an adequate remedy under the APA, we may elect to analyze the APA claim only.") (cleaned up)).

This Court has already concluded that Plaintiffs failed to establish either a clear duty or the absence of an alternative remedy. ECF 20 at 6-7. The TAC provides no basis to revisit that conclusion. Counts III and IV should therefore be dismissed for lack of jurisdiction or, in the alternative, for failure to state a claim.

## III. Count V is Moot Because the Benefits Hold Policy Has Been Vacated and Enjoined.

Count V presents a different theory from Plaintiffs' "unreasonable delay" claims. It challenges the Benefits Hold Policy as final agency action that is arbitrary, capricious, and contrary to law under § 706(2)(A). TAC ¶¶ 140-50. Plaintiffs were correct to point out in their reconsideration motion that a challenge to affirmative agency action under § 706(2) does not depend on the existence of a discrete, legally required action under § 706(1). ECF 25 at 7-8. But

that distinction does not resolve the dispositive problem. The affirmative agency action identified in Count V no longer governs USCIS adjudications.[8]

**A. The Court can no longer grant effective relief against the Benefits Hold Policy.**

Article III requires a live controversy at every stage of the litigation. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90-91 (2013). A claim becomes moot when intervening events make it impossible for the court to grant effectual relief. *Church of Scientology of California v. United States*, 506 U.S. 9, 12 (1992). Because mootness eliminates the live case or controversy required by Article III, it deprives the Court of subject-matter jurisdiction. *Brinsdon*, 863 F.3d at 345.

That is the situation here. Count V asks the Court to declare the Benefits Hold Policy unlawful and order Defendants to "cease" implementing it. TAC ¶ 150. But the District of Rhode Island has already vacated that policy. *Dorcas Int'l Inst.*, 834 F.Supp.3d at 268-69, *judgment entered*, 2026 WL 1695954 (D.R.I. June 11, 2026). USCIS then instructed its personnel that the Policy Memos must be treated as though they were not in effect. USCIS.GOV, "Court Order on Hold Policies" (June 12, 2026) (last visited Sept. 9, 2026). The relief Plaintiffs request is therefore already in place on an agency-wide basis.

The appeal in *Dorcas Int'l* did not revive the Benefits Hold Policy. An appeal does not automatically stay the judgment under review. *Nken v. Holder*, 556 U.S. 418, 421 (2009); Fed. R. Civ. P. 62. More importantly, the First Circuit considered Defendants' request for a stay pending appeal and declined to stay the judgment as to the Benefits Hold Policy. *Dorcas Int'l Inst.*, 2026 WL 2364384, at *1. The court stayed only the portion of the judgment addressing the distinct

[8] As explained, *supra* n. 4, USCIS has approved several Plaintiffs' CAA and/or EAD Applications since the time of the *Dorcas* court's vacatur of the Benefits Hold Policy on June 5, 2026. These Plaintiffs can therefore *attest* to the fact that the Benefits Hold Policy is no longer in effect.

Comprehensive Re-Review Policy. *Id.* Thus, the vacatur of the Benefits Hold Policy remains effective during the appeal.

The subsequent district court order in *Red Eagle Law* removes any remaining doubt about the relief available here. That court separately enjoined the Benefits Hold Policy and ordered USCIS to process covered applications in the normal course. 2026 WL 2476424, at *5-7. USCIS again publicly confirmed that it was processing applications as if the Benefits Hold Policy were not in force. USCIS.GOV, "Recent Court Order on Hold Policies" (Aug. 28, 2026) (last visited Sept. 9, 2026).[9] A declaration or injunction from this Court would not change how USCIS processes Plaintiffs' applications. It would merely duplicate relief already imposed.

This is not a case in which a defendant voluntarily ceased challenged conduct while retaining the practical ability to resume it at will. The Benefits Hold Policy was vacated by a final judgment, the First Circuit left that vacatur unstayed, and a second district court entered an injunction prohibiting the same policy. Those binding orders—not a discretionary litigation promise—prevent USCIS from applying the Benefits Hold Policy. When intervening legal events eliminate the challenged rule and leave no effective relief for the court to grant, the claim is moot. *See Kremens v. Bartley*, 431 U.S. 119, 128-29 (1977); *Am. Med. Ass'n*, 857 F.2d at 270. Plaintiffs seek no damages. Their requested declaration and injunction would have no present legal effect. *See Brinsdon*, 863 F.3d at 345 ("The mootness doctrine applies to equitable relief . . . .").

**B. Plaintiffs' references to other directives do not save Count V.**

Plaintiffs cannot avoid mootness by shifting among the distinct directives discussed in the TAC. Count V specifically identifies the challenged policy as the "Benefits Hold Policy"

---

9 *See also supra*, n. 7 (citing to the Policy Memos (containing the Benefits Hold Policy), which state they are no longer in effect).

"enshrined in PM-602-0192." TAC ¶ 143. Plaintiffs' reconsideration motion confirms that the challenged hold is the directive imposed through the December and January Memos. ECF 25 at 1-2, 7-8. That is the policy vacated in *Dorcas Int'l*, left unstayed by the First Circuit, and later enjoined again in *Red Eagle Law*.

The First Circuit did stay enjoining the Comprehensive Re-Review Policy. *Dorcas Int'l Inst.*, 2026 WL 2364384, at *1. But that policy presents a different issue than the Benefits Hold Policy. It concerns benefits that USCIS *previously approved* for certain persons who entered the United States on or after January 20, 2021. *Dorcas Int'l Inst.*, 834 F. Supp. 3d at 271-72. Although the First Circuit stayed the judgment as to that policy, no Plaintiff alleges that USCIS is currently re-reviewing his or her previously-approved benefit. To the contrary, the TAC alleges that Plaintiffs' applications remain pending. TAC ¶¶ 11-52, 75, 112. Absent a pleading that the Comprehensive Re-Review Policy specifically caused an injury to any Plaintiff, Plaintiffs lack standing to challenge it. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

**C. Count V does not state a plausible claim against any policy that remains in effect.**

Even setting mootness aside, Count V does not plead a plausible § 706(2)(A) claim against any extant agency action. The count rests on the allegation that the Benefits Hold Policy "remains in effect" and continues to prevent final adjudication of Plaintiffs' applications. TAC ¶¶ 143-45. Public court and agency records establish that premise is no longer true. The policy was vacated, the vacatur was left unstayed, and the policy was later enjoined.

The remaining allegations conflate distinct directives or state legal conclusions without connecting an operative policy to an individual Plaintiff. The allegation in TAC paragraph 146 concerning the re-review of previously approved benefits relates to the Comprehensive Re-Review Policy, but again no Plaintiff alleges that USCIS is currently delaying the re-review of any

previously approved benefit. Paragraph 147's allegations regarding the absence of an end date and exception process concern the now-vacated Benefits Hold Policy. And although the TAC alleges that Defendants failed to consider relevant factors, ignored alternatives, and acted without a reasoned basis, it does not identify any extant final agency action applied to any Plaintiff or the administrative record the agency allegedly failed to consider. TAC ¶¶ 85, 88-89, 143-48.

APA § 706(2)(A) provides for review of a particular final agency action, and that review ordinarily is "limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record . . . ." *Dep't of Com. v. New York*, 588 U.S. 752, 780 (2019). It does not authorize an abstract challenge to related policies divorced from a pleaded injury and an identifiable final agency action. *Lujan*, 497 U.S. at 890-94. And to the extent Count V ultimately seeks judicial control over the order or pace of USCIS's adjudications, it encounters the same statutory limits discussed above. Indeed, "[i]f no judicially manageable standards are available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate agency action for 'abuse of discretion.'" *Chaney*, 470 U.S. at 830. No statute supplies a manageable timing standard subjecting USCIS to APA § 701(a)(2), and neither *Dorcas Int'l*, nor *Red Eagle Law*, suggests otherwise.

**IV. The TAC Does Not State a Claim Against DHS, Secretary Mullin, or Director Edlow.**

The TAC also suffers from a separate pleading defect: It names USCIS, DHS, Director Edlow, and Secretary Mullin, but it asserts each count against "Defendants" collectively. TAC ¶¶ 116-50. The operative allegations concern USCIS's processing of immigration-benefit applications and directives issued by USCIS. *Id.* ¶¶ 57-115. The TAC does not identify what DHS, Secretary Mullin, or Director Edlow separately did—or failed to do—to cause any Plaintiff's

alleged injury. Rule 8 does not permit such group pleadings. *Armstrong v. Ashley*, 60 F.4th 262, 274-75 (5th Cir. 2023); *Owens*, 789 F.3d at 537-38.

At minimum, the Court should dismiss the "official capacity" claims brought against Secretary Mullin and Director Edlow. An official-capacity suit is treated as a suit against the governmental entity, not as a separate claim against the individual officeholder. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). The Fifth Circuit therefore permits dismissal of official-capacity claims when the governmental entity is also named and the claims are duplicative. *See Garza v. Escobar*, 972 F.3d 721, 734 (5th Cir. 2020). Here, the claims against Director Edlow are claims against USCIS, which is already a Defendant. The claims against Secretary Mullin are claims against DHS, which is also already a Defendant. The TAC alleges no distinct conduct by either official and seeks no relief from either official that could not be obtained from the corresponding agency.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss all claims in the TAC against all Defendants for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). In the alternative, the Court should dismiss the TAC under Rule 12(b)(6) for failure to state a claim.

Respectfully submitted,

**JUSTIN R. SIMMONS**
United States Attorney

By: */s/ Samuel M. Shapiro*
**SAMUEL M. SHAPIRO**
Assistant United States Attorney
Georgia Bar No. 717286
601 N.W. Loop 410, Suite 600
San Antonio, Texas 78216
(210) 384-7100 (phone)
(210) 384-7312 (fax)
samuel.shapiro@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I certify that on September 11, 2026, I caused the foregoing document to be served on Plaintiff's counsel via the Court's ECF system.

*/s/ Samuel M. Shapiro*
SAMUEL M. SHAPIRO
Assistant United States Attorney